IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MCGOWAN; A.M., a Minor, by and through his Guardian ANTHONY MCGOWAN; and CARLOS PENA, individually and on behalf of similarly situated individuals, <br><br> *Plaintiffs*, <br><br> v. <br><br> VERIFF, INC., a Delaware corporation, <br><br> *Defendant.* | No. 21-cv-06706 <br><br> Hon. Jorge L. Alonso <br><br> Magistrate Hon. Sunil H. Harjani |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Anthony McGowan; A.M., a Minor, by and through his guardian Anthony McGowan; and Carlos Pena (collectively "Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this First Amended Class Action Complaint against Defendant Veriff, Inc. ("Defendant" or "Veriff") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege the following based on personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

## INTRODUCTION

1. Plaintiffs seek to represent a class of individuals who had their unique biometric identifiers and biometric information unlawfully collected, used, and disseminated without their consent by Veriff.

1

2. On behalf of themselves and the proposed Class defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class, together with costs and reasonable attorneys' fees.

## PARTIES

4. At all relevant times, Plaintiffs A.M. and his Guardian Anthony McGowan have been citizens of Illinois and residents of the state of Illinois.

5. At all relevant times, Plaintiff Carlos Pena has been a citizen of Illinois and a resident of Illinois.

6. Defendant Veriff, Inc. is a Delaware corporation that conducts business throughout Illinois.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

8. This Court may assert personal jurisdiction over Defendant, because Defendant knowingly does business within Illinois and knowingly transacts business in Illinois such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiff's claims arise out of Defendant's in-state actions as Plaintiffs' facial biometrics were knowingly obtained by Defendant in Illinois.

9. Venue is proper in this District because a substantial part of the key events and omissions giving rise to the claims asserted herein occurred in this District.

**THE BIOMETRIC INFORMATION PRIVACY ACT**

10. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

11. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

12. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including facial scans.

13. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that obtain biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

14. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

15. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

16. In BIPA, the Illinois General Assembly identified several distinct activities that subject private entities to liability, including:

    a.    collecting, capturing, purchasing, receiving, or obtaining biometrics, 740 ILCS 14/15(b);

    b.    selling, leasing, trading, or otherwise profiting from biometrics, 740 ILCS 14/15(c); and

    c.    disclosing or otherwise disseminating biometrics, 740 ILCS 14/15(d).

17. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

## COMMON FACTUAL ALLEGATIONS

18. Defendant Veriff is a global provider of identity verification services.[1] Defendant developed a proprietary biometrically enabled Application Programming Interface (or "API"), and incorporates its API platform service into its clients' mobile or internet-based applications, where Defendant collects and analyze its clients' users' facial biometrics in order to authenticate their

---

[1] https://apnews.com/article/technology-0d0d9f138e0d1a5b73b1f536f0deafbc (last accessed Feb. 22, 2022).

age and identities. Critically, Defendant, rather than its customers, performs the biometric age and identity verification, requiring Defendant's collection and storage of individuals' unique biometrics.

19. Defendant's API performs its identity verification by requiring the user to present some form of identification that features a picture of their face from which it collects a facial biometric blueprint, and then obtaining a "selfie" from a live picture of the user's face that it uses to collect a separate facial biometric blueprint, which it then compares to the one obtained from the identifying document. If Defendant's API determines that the facial biometrics from the two sets of pictures match, the user's identity is verified. As a result, Defendant markets and promotes its API's capability to autonomously verify the authenticity of government-issued photo IDs from every state in the United States, including Illinois.[2]

20. Notably, Defendant collects more than just biometric data from its clients' users. It also harvests technical data from such users' devices, including the users' IP addresses and domain names, and geographic location, such as the city or state from where the user is connecting to Defendant's biometric authentication service.[3] Thus, Defendant knows when it is interacting with, and collecting biometric data from, Illinois residents.

## FACTS SPECIFIC TO PLAINTIFFS

21. One of Defendant's clients is Roblox Corporation, the owner and operator of a popular children's video game.

---

[2] https://www.veriff.com/supported-countries (Last accessed Feb. 22, 2022).
[3] https://support.veriff.com/en/articles/3462490-where-does-veriff-store-the-data (Last accessed Feb. 22, 2022).

5

22. In 2021, Defendant worked with Roblox Corporation to implement its age and identity verification API platform into Roblox's process for verifying Roblox users' identities and ages.

23. For example, in or about September 2021, while in the state of Illinois, Plaintiff A.M. accessed his Roblox game account on a desktop computer to enable social capabilities, including Roblox's spatial voice feature. At this time, Plaintiff was asked to "Verify His Age" and was forwarded to an "Identity Verification" prompt that, as shown below required him to scan a QR code using his cell phone.



24. When Plaintiff A.M. scanned the QR code on Roblox's website his cell phone browser was forwarded to Roblox.com/verify, which featured the below prompt and hosted Defendant's biometric identity verification API.



25. After Plaintiff A.M. went forward with starting the identity verification session as shown below, he was prompted to take a photo of a valid photo ID document.



7

26. Plaintiff A.M. asked his father and Guardian, Plaintiff Anthony McGowan, for his driver's license to complete Defendant's verification process, which Plaintiff Anthony McGowan provided.

27. Upon taking a picture of Plaintiff Anthony McGowan's driver's license and submitting it to Defendant's biometric age and identity verification API, Defendant's said age and identity API extracted the biometric facial geometry of Plaintiff Anthony McGowan's face from the photo of his driver's license.

28. After providing Plaintiff Anthony McGowan's driver's license, as the last part of the verification process, Plaintiff A.M. was finally asked to take a selfie picture. Upon taking a selfie picture of his face, Defendant's API extracted the biometric facial geometry of Plaintiff A.M.'s face from his selfie to compare its likeness to the facial geometry previously extracted from Plaintiff Anthony McGowan's driver's license photo and accepted Plaintiff A.M.'s verification.

29. In or about September 2021, while within the state of Illinois, Plaintiff Carlos Pena similarly went through the process of verifying his identity through Defendant's embedded age and identity verification API to enable Roblox's Spatial Voice Feature.

30. When Plaintiff Pena was asked to provide a picture of a valid photo ID document, he submitted a photo of his Illinois driver's license to Defendant's verification API which was embedded within the Roblox video game.

31. As with Plaintiff Anthony McGowan's driver's license, Defendant's biometric age and identity verification API extracted the biometric facial geometry of Plaintiff Pena's face from the photo of his face found on his Illinois driver's license that he had submitted to Defendant.

32. After providing his driver's license, Plaintiff Pena was asked to then take and submit a selfie picture. As with Plaintiff A.M., upon taking and submitting the selfie photo of his

face to Defendant, its age and identity verification API extracted the biometric facial geometry from Plaintiff Pena's face from his submitted selfie to collect and compare it with the biometric facial geometry that Defendant had previously extracted from Plaintiff Pena's driver's license photo, and accepted Plaintiff Pena's age verification submission.

33. Thus, each time that Plaintiffs were required to upload a government issued photo ID and/or a "selfie" to Defendant's identity and age verification API platform, Defendant collected, captured, or otherwise obtained Plaintiffs' biometrics in the form of a scan of their facial geometry.

34. When Plaintiffs engaged with Defendant's age and identity verification API, Defendant collected the IP address and geolocation of Plaintiffs' devices, and processed their Illinois driver's licenses and selfies. Thus, Defendant knew its API was interacting with individuals located in the state of Illinois, and Defendant nonetheless knowingly proceeded to process Plaintiffs' identities using biometric technology without regard for BIPA's requirements.

35. Despite collecting, capturing, or otherwise obtaining Plaintiffs' facial biometrics, Defendant had failed to obtain valid written consent as required by BIPA to collect such biometric identifiers. Defendant also failed to provide Plaintiffs with written disclosures informing them of the specific purpose and length of term for which their biometrics were being collected.

36. Defendant has also unlawfully profited from the facial biometrics that it obtained from Plaintiffs. On information to belief, Defendant charges for its biometric authentication services on a per-verification basis, such that Plaintiffs' and other Illinois individuals' biometric data is an essential element of Defendant's business.

37. Furthermore, on information and belief, Defendant unlawfully disclosed Plaintiffs' and other Class members' biometrics to its third-party cloud and data storage vendors, including Amazon Web Services, without Plaintiffs' informed consent.

## **CLASS ALLEGATIONS**

38. Plaintiffs bring this action on behalf themselves and a class of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class defined as follows:

> **Class**: All persons within the state of Illinois whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, transmitted or otherwise used by Veriff, Inc. any time within the applicable limitations period.

39. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

40. There are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiffs, the members can be easily identified through Defendant's records.

41. Plaintiffs' claims are typical of the claims of the Class they seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the Class.

42. There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendant collects, captures, or otherwise obtains biometric identifiers or biometric information from Illinois residents;

b. Whether Defendant disseminated biometrics;

c. Whether Defendant profited from the facial biometrics it had collected from the members of the class;

d. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

e. Whether Defendant obtained consent from the Class members before disseminating their biometric identifiers or biometric information to third parties;

f. Whether Defendant's conduct violates BIPA;

g. Whether Defendant's BIPA violations are willful or reckless; and

h. Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

43. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

45. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief

11

to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### (On behalf of Plaintiffs and the Class)

46. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

47. Defendant is a private entity under BIPA.

48. As discussed above, Plaintiffs and the other members of the class had their facial biometrics, extracted, collected, captured, and otherwise obtained by Defendant as a result of interacting with Defendant's biometric age and identity verification API.

49. BIPA requires private entities like Defendant to obtain informed written consent from individuals before acquiring their biometrics. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

50. Plaintiffs and the other Class members have had their "biometric identifiers," namely scans of their facial geometries and information derived therefrom, *i.e.* "biometric information," collected, captured, or otherwise obtained by Defendant when they interacted with Defendant's API platform. 740 ILCS 14/10.

51. Each instance when Plaintiffs and the other Class members interacted with Defendant's API platform, Defendant captured, collected, stored, and/or used Plaintiffs' and the other Class members' facial geometry biometric identifiers without valid written consent and without complying with and, thus, in violation of BIPA.

52. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

   a. Defendant failed to inform Plaintiffs and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

   b. Defendant failed to inform Plaintiffs and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

   c. Defendant failed to inform Plaintiffs and the Class in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2); and

   d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3).

53. As a result, Defendant has violated section 15(b) of BIPA.

54. Defendant knew, or was reckless in not knowing, that its biometric age and identity verification API technology, which thousands of Illinois residents interacted with, would be subject to Section 15(b) of BIPA, a statutory provision passed in 2008, yet failed to comply with the statute.

55. BIPA provides for statutory damages of $5,000 for each willful and/or reckless

violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

56. Defendant's violations of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA.

57. Accordingly, with respect to Count I, Plaintiffs, both individually and on behalf of the proposed Class, pray for the relief set forth below.

### COUNT II
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)
### (On behalf of Plaintiffs and the Class)

58. Please incorporate the foregoing allegations as if fully set forth hear in.

59. Defendant Veriff is a private entity under BIPA.

60. As discussed above, Plaintiffs and the other members of the Class have had their facial biometrics, collected, captured, and obtained by Defendant Veriff as a result of interacting with Defendant's biometric age and identity verification API.

61. Section 15(c) of BIPA prohibits any private entity in possession of biometrics, such as Defendant Veriff, from selling, leasing, trading, or otherwise profiting from such biometrics. 740 ILCS 14/15(c).

62. As alleged herein, Defendant profited directly from the facial biometrics it obtained from Plaintiffs and the Class members, as, on information and belief, Defendant sells its biometric identification technology to its customers such as Defendant Roblox on a per-verification basis. The biometrics of Plaintiffs and the Class members are a necessary element to Defendant's business model.

63. Accordingly, Defendant has violated Section 15(c) of BIPA.

64. Defendant knew, or was reckless in not knowing, that its biometric API technology would be subject to the provisions of Section 15(c) of BIPA, a statutory provision in effect since 2008, yet failed to comply with the statute.

65. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

66. Defendant's violations of Section 15(c) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(c) of BIPA.

67. Accordingly, with respect to Count II, Plaintiffs, both individually and on behalf of the proposed Class, pray for the relief set forth below.

## COUNT III
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)
### (On behalf of Plaintiffs and the Class)

68. Please incorporate the foregoing allegations as if fully set forth hear in.

69. Defendant Veriff is a private entity under BIPA.

70. BIPA requires that a private entity such as Defendant to obtain informed consent prior to disclosing or disseminating ones' biometric information and/or biometric identifiers to third parties. 740 ILCS 14/15(d)(1)

71. On information and belief, after collecting their biometrics, Defendant has disclosed or otherwise disseminated the biometric information of Plaintiffs and Class members to third party cloud storage vendors, such as Amazon Web Services, for data storage without seeking or receiving Plaintiffs' informed consent to do so.

72. Accordingly, Defendant has violated section 15(d) of BIPA.

73. Defendant knew or was reckless in not knowing that it's biometric identity verification process would be subject to the provisions of section 15(d) of BIPA, a statutory provision that has been in effect since 2008, yet still failed to comply with the statute.

74. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

75. Defendant's violations of section 15(d) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with section 15(d) of BIPA.

76. Accordingly, with respect to Count III, Plaintiffs, both individually and on behalf of the proposed Class, pray for the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

   a. Certifying the Class as defined above, appointing Plaintiffs as class representatives sand the undersigned as class counsel;

   b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

   c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA;

   d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: February 22, 2022

Respectfully Submitted,

ANTHONY MCGOWAN, A.M., a minor, by and through his Guardian ANTHONY MCGOWAN, and CARLOS PENA, individually and on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiffs' Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*